UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DYNACOLOR, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-2590-B |
| | § | |
| RAZBERI TECHNOLOGIES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

DynaColor, Inc. and Razberi Technologies, Inc. entered into a purchase agreement whereby Razberi would purchase parts for network video recorders from DynaColor. A dispute arose, and the parties arbitrated their claims. DynaColor prevailed at the arbitration, and the arbitrator entered an award against Razberi. DynaColor then filed a motion requesting that the Court confirm the arbitration award and enter judgment against Razberi (Doc. 2). Razberi filed a crossmotion responding to DynaColor's motion and asking the Court to vacate the award (Doc. 10).

For the reasons outlined below, Razberi's Motion to Vacate (Doc. 10) is **DENIED** and DynaColor's Motion to Confirm Arbitration Award and Enter Judgment (Doc. 2) is **GRANTED**. The Clerk is **DIRECTED** to file this Order **UNDER SEAL**.

## I.

## BACKGROUND[1]

---

[1] The Court draws its factual account from the parties' briefs and documents presented in support of their motions.

The parties' dispute arises from a purchase agreement between Razberi and DynaColor. Under this agreement, Razberi agreed to buy network video recorders ("NVRs") and their component parts from DynaColor. DynaColor is a publicly held Taiwanese corporation that designs, manufactures, and distributes camera products and equipment. Doc. 2, DynaColor's Mot. to Confirm, 1. Razberi is a Delaware corporation that assembles and sells NVRs. *Id.* at 2. Razberi was formed as a subsidiary of DynaColor; Razberi purchased NVR parts from DynaColor, assemble the NVRs, and sell completed NVR units to buyers. Doc. 10, Razberi's Mot. to Vacate, 2. One of the buyers Razberi found was Avigilon. *Id.* In March 2014, Razberi, Avigilon, and DynaColor entered into a sales contract whereby Razberi agreed to sell Aviligon NVRs, and DynaColor agreed to guarantee Razberi's obligations to Aviligon. Doc. 4, DynaColor's App'x (Final Arbitration Award), 650. Razberi represents that this relationship with Aviligon was of "critical importance" to Razberi's success. Doc. 10, Razberi's Mot., 2.

In November 2014, Razberi and DynaColor entered into a purchase agreement that specified the terms and conditions under which Razberi would purchase NVR parts from DynaColor. Doc. 2, DynaColor's Mot. to Confirm, 3. This agreement contains the arbitration clause that governs their dispute. *Id.* at 4. In connection with the purchase agreement, Razberi executed and delivered to DynaColor a promissory note in the amount of $595,706 to be paid in installments over a twenty-four-month period. *Id.* Under the purchase agreement, Razberi bought approximately $983,700 in parts and incurred $5,350 in repairs. *Id.* But Razberi did not pay for the parts and repairs. *Id.* at 5. Nor did Razberi pay approximately $200,000 that remained due under the promissory note. *Id.* DynaColor sent Razberi a letter accelerating the promissory-note payments and demanding payment in full for the parts and repairs. *Id.* The parties attempted to settle their dispute in accordance with

the procedure outlined in the purchase agreement. *Id.* When this failed, DynaColor filed a demand for arbitration with the American Arbitration Association. *Id.* DynaColor claimed that Razberi breached its obligations under the purchase agreement and promissory note. *Id.*

Initially attempting to avoid arbitration, Razberi filed suit in this Court claiming DynaColor breached other contractual obligations, violated trade-secrets laws, and breached its fiduciary duty to Razberi. *See Razberi Tech., Inc. v. DynaColor, Inc. et al.*, No. 3:16-cv-2706-N (Filed Sept. 22, 2016). DynaColor filed a motion to compel arbitration, and the Court found that the purchase agreement contained a valid arbitration clause that applied to Razberi's claims. *Id.* (Doc. 40, Apr. 25, 2017 Order). The Court granted DynaColor's motion and ordered the parties to arbitrate Razberi's claims. *Id.*

At arbitration, DynaColor maintained its contract claims against Razberi, and Razberi brought counterclaims against DynaColor. These counterclaims were for breach of fiduciary duties, tortious interference, fraud, breach of contract, and misappropriation of trade secrets. Doc. 4, DynaColor's App'x (Final Arbitration Award), 654–79. Razberi sought damages in the form of lost profits, lost enterprise value, unjust enrichment, exemplary damages, and injunctive relief. *Id.* In short, Razberi based its claims on secret negotiations between DynaColor and Avigilon, which Razberi argued were had for the purpose of replacing Razberi as Avigilon's NVR supplier. Doc. 10, Razberi's Mot. to Vacate, 3. Before Razberi and DynaColor entered into their purchase agreement, DynaColor and Avigilon entered into their own sales agreement. *Id.* Sometime after Razberi and DynaColor entered into their purchase agreement, Aviligon stopped placing orders with Razberi. *Id.* Sometime after losing Aviligon's business, Razberi was unable to make payments to DynaColor on

the promissory note or for the other debts owed for parts and repairs. *See id.* at 3; Doc. 14, DynaColor's Resp., 3–4.

After a six-day evidentiary hearing, and pre- and post-hearing briefing, the arbitrator issued an award in favor DynaColor for $1,362,664.95, which included its damages, prejudgment interest, and attorneys' fees. *Id.* at 683. DynaColor was also awarded postjudgment interest. *Id.* As for Razberi's claims, the arbitrator made factual findings that DynaColor "intentionally and systematically" deceived Razberi and falsely represented its dealings with Avigilon. *Id.* at 656–58. However, the arbitrator denied all of Razberi's counterclaims for failing to prove essential elements of those claims. Relevant here, the arbitrator found that Razberi was unable to prove that DynaColor's conduct caused Razberi to be damaged under any of its theories of recovery. *Id.* at 677–78. Specifically, the arbitrator concluded that because Razberi could not prove that DynaColor's misrepresentations and malfeasances were the but-for cause of its lost profits it was not entitled to relief. *Id.* at 676–78, 683–84.

On September 28, 2018, DynaColor filed its motion to confirm the arbitration award pursuant to §§ 9 and 13 of the Federal Arbitration Act. Doc. 2, DynaColor's Mot. to Confirm. On November 6, 2018, Razberi filed its response in opposition to confirmation and crossmotion to vacate the award. Doc. 10, Razberi's Mot. to Vacate. The responses and replies have been filed, and the motions are now ripe for review.

## II.

## LEGAL STANDARD

The Federal Arbitration Act (FAA) directs courts to confirm arbitration awards unless the award is vacated, modified, or corrected as provided for in §§ 10 and 11 of the Act. 9 U.S.C. § 9.

The FAA reflects a strong national policy favoring arbitration. *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534 (5th Cir. 2016) (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008)). Therefore, "judicial review of an arbitration award is extraordinarily narrow." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471–72 (5th Cir. 2012) (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)).

The Supreme Court has held that § 10 of the FAA provides the exclusive grounds for vacating an arbitration award. *Hall St.*, 552 U.S. at 585–87. Section 10 permits a district court to vacate an arbitration award in these very limited circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "An arbitration award may not be vacated for 'mere mistake of fact or law.'" *Soaring Wind Energy, LLC v. CATIC USA, Inc.*, 333 F. Supp. 3d 642, 651 (N.D. Tex. 2018) (quoting *Rain CII Carbon*, 674 F.3d at 472). "The burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it." *Cooper*, 832 F.3d at 544 (citing *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 385 & n.9 (5th Cir. 2004)).

"Arbitration is a matter of contract." *BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 787 (5th Cir. 2015) (quoting *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)). "Thus, the

power and authority of arbitrators in an arbitration proceeding is dependent on the provisions under which the arbitrators were appointed." *Id.* (internal quotations omitted). When determining if an arbitrator exceeded his or her powers under § 10(a)(4) of the FAA, the reviewing court should "sustain an arbitration award as long as the arbitrator's decision 'draws its essence' from the contract—even if [the court] disagree[s] with the arbitrator's interpretation of the contract" *Cooper*, 832 F.3d at 545 (quoting *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013)). Accordingly, review of arbitrators' awards under § 10(a)(4) is limited to the "sole question of whether the arbitrator (even arguably) interpreted the parties' contract." *BNSF R. Co.*, 777 F.3d at 788 (alterations incorporated) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013)). "[A] misapplication of law or a misinterpretation of fact is not a sufficient basis for setting aside the final award of an arbitrator." *McKool Smith, P.C. v. Curtis Int'l, Ltd.*, 2015 WL 5999654, at *2 (N.D. Tex. Oct. 14, 2015) (citing *Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 258 (5th Cir. 2007), *abrogated on other grounds*, *Hamstein Cumberland Music Grp. v. Williams*, 532 F. App'x 538, 542 (5th Cir. 2013)).

## III.

## ANALYSIS

Razberi moves to vacate the arbitration award on one ground—that the arbitrator manifestly disregarded the law in rejecting its unjust enrichment theory of recovery. Doc. 10, Razberi's Mot. to Vacate, 4. Razberi contends the arbitrator improperly required Razberi to prove DynaColor caused Razberi to suffer some harm to recover for unjust enrichment. *Id.* Razberi argues that this was manifest disregard for the applicable law and thus reason to vacate the award under FAA § 10(a)(4). *Id.* In response, DynaColor argues that the manifest-disregard standard is no longer a controlling

principle of law in the Fifth Circuit. Doc. 14, DynaColor's Resp., 10–13. DynaColor also argues that regardless of what standard applies, Razberi has failed to show that the arbitrator exceeded his powers. *Id.* at 14–17.

The Fifth Circuit had previously recognized "manifest disregard for the law" as an additional, nonstatutory basis for vacating an arbitration award. *Woods v. P.A.M. Trans. Inc.-L.U.*, 440 F. App'x 265, 269 (5th Cir. 2011) (citing *Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003)). This ground for vacatur was considered "extremely narrow," requiring "more than error or misunderstanding with respect to the law." *Am. Laser Vision*, 487 F.3d at 259. An award could be vacated under this standard only if: (1) the error was so "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator"; (2) the arbitrator "appreciated the existence of a clearly governing principle but decided to ignore or pay no attention to it"; and (3) the award resulted in "significant injustice." *Id.* (alterations omitted) (quoting *Prestige Ford v. Ford Dealer Comput. Servs., Inc.*, 324 F.3d 391, 395–96 (5th Cir. 2003) and *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 355 (5th Cir. 2004)).

However, the continued survival of the manifest-disregard standard has come into question after the Supreme Court's decision in *Hall Street*. In *Hall Street*, the Supreme Court held that the statutory grounds under §§ 10 and 11 of the FAA are the exclusive grounds to vacate or to modify an arbitration award. *Hall Street*, 552 U.S. at 584. Shortly thereafter, the Fifth Circuit considered whether, in light of *Hall Street*, the manifest-disregard standard remained valid as an independent, nonstatutory ground for vacatur. *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009). The court held it did not. *Id.* The court reasoned that *Hall Street* made it clear that § 10 of the FAA provided the exclusive grounds for vacatur and that the manifest-disregard standard was

a judicially created, common-law ground for vacatur. *Id.* at 355, 358. Thus, the court held, "to the extent that manifest disregard of the law constitutes a nonstatutory ground for vacatur, it is no longer a basis for vacating awards under the FAA." *Id.* at 355. However, after *Hall Street* and *Citigroup*, it is unclear whether manifest disregard for the law survives as "judicial gloss on the enumerated grounds for vacatur" in § 10 of the FAA—*i.e.*, whether a party can argue an arbitrator exceeded his powers under § 10(a)(4) in manifestly disregarding the law. *See Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010) (acknowledging the issue but declining to rule on it).

The question of whether the manifest-disregard standard survives as a statutory ground for vacating arbitration awards appears to remain open in the Fifth Circuit. *See McKool Smith, P.C. v. Curtis Int'l, Ltd.*, 650 F. App'x 208, 212 (5th Cir. 2016) ("While we have yet to explicitly decide whether [manifest disregard of the law] can be [a] statutory ground[] for vacatur, we need not decide this issue today."). District courts in this circuit have taken divergent routes in answering this question. *Compare Baylor Health Care Sys. v. Equitable Plan Servs., Inc.*, 955 F. Supp. 2d 678, 701 (N.D. Tex. 2013) (holding that manifest-disregard standard is no longer a viable basis for vacating an arbitration award) *and White v. Valero Refining New Orleans, LLC*, 2013 WL 3154731, at *5 (E.D. La. June 19, 2013) (same) *with Air Ctr. Helicopters, Inc. v. Starlite Invs. Ireland Ltd.*, 2018 WL 3631782, at *5 (N.D. Tex. July 30, 2018) (holding that manifest-disregard standard falls under § 10(a)(4)'s "imperfect execution of powers" ground for vacatur). There are also cases in which parties concede the issue. *See Brendel v. Meyrowitz*, 2017 WL 1178244, at *6 (N.D. Tex. Mar. 30, 2017) (defendants acknowledging "that 'manifest disregard of the law' is no longer recognized as a ground for vacatur in the Fifth Circuit").

The Court does not need to resolve this issue here. Regardless of what standard applies, Razberi has failed to show that the arbitrator here did more than commit a legal error. *See Oxford Health Plans LLC*, 569 U.S. at 569 (recognizing that, under § 10(a)(4), "[i]t is not enough . . . to show that the [arbitrator] committed an error—or even a serious error") (quoting *Stolt-Nielsen*, 559 U.S. at 671)). Indeed, Razberi cites only one reason to upend the award here: "[T]he Arbitrator applied a damages-type causation standard to Razberi's claim for unjust enrichment." Doc. 10, Razberi's Mot. to Vacate, 8. Razberi is specifically referring to the arbitrator's denial of damages based on an unjust-enrichment theory of recovery. Doc. 4, DynaColor's App'x (Final Arbitration Award), 678. Razberi argues that Texas law does not require a party that requests an equitable remedy, such as unjust enrichment, to prove damages. Doc. 10, Razberi's Mot. to Vacate, 9–10. Razberi cites to two Supreme Court of Texas cases to show this was a clear governing principle of Texas law. *Id.* (citing *In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex. 2015) and *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221 (Tex. 2017)). Razberi argues that the arbitrator appreciated this clearly established principle, yet disregarded it. *Id.* at 11. And Razberi argues that substantial injustice resulted because of the arbitrator's award. *Id.*

In response, DynaColor disagrees with Razberi's interpretation of Texas law. Doc. 14, DynaColor's Resp., 15–16. DynaColor also argues that even if it were clearly established, the arbitrator never appreciated the existence of this principle, and thus did not manifestly disregard the law. *Id.* at 14. Finally, DynaColor argues that the arbitrator did not reject Razberi's claim for unjust-enrichment damages solely on the grounds that Razberi failed to show they were caused by DynaColor's actions; instead, DynaColor contends that the arbitrator also recognized that unjust enrichment is an equitable remedy that "is not a proper remedy merely because it might appear

expedite [sic] or generally fair that some recompense be afforded to an unfortunate loss to the claimant or because the benefits to the person sought to be charged amount to a windfall." *Id.* at 16 (citing Doc. 4, DynaColor's App'x (Final Arbitration Award), 678).

On its latter two arguments, the Court agrees with DynaColor. While the arbitrator may have made an error or misunderstood the law by stating that recovery for unjust enrichment "as with Razberi's other damage claims requires causation," Doc. 4, DynaColor's App'x (Final Arbitration Award), 679, this, in itself, is not sufficient to overturn the award. *See McKool Smith*, 650 F. App'x at 212–13 ("Under our pre-*Hall Street* opinions addressing manifest disregard of the law, we held that manifest disregard of the law 'mean[t] more than error or misunderstanding with respect to the law.'") (alterations in original) (quoting *Presitge Ford*, 324 F.3d at 395).

To prevail, Razberi would need to show that the arbitrator "appreciated the existence of a clearly governing principle but decided to ignore or pay no attention to it." *Id.* (alterations incorporated). Razberi has not done so. In rejecting Razberi's request for equitable relief, the arbitrator cited to no case that explicitly held recovery for unjust enrichment does not require causation. Doc. 4, DynaColor's App'x (Final Arbitration Award), 678 (citing *Pope v. Garret*, 211 S.W.2d 559, 560, & 562 (Tex. 1948) and *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App.—Austin 1987, writ. denied)). The fact that the arbitrator recognized that "unjust enrichment is an equity-based remedy," as Razberi argues, is not sufficient to show the arbitrator was aware that causation was not a requirement of an unjust-enrichment claim. *Id.*; *see* Doc. 19, Razberi's Reply, 5 & n.8. Now, before this Court, Razberi points to Texas law holding that a party is "not required to show causation and actual damages as to any equitable remedies" it seeks. *See* Doc. 10, Razberi's Mot. to Vacate, 9 (quoting *Parker*, 514 S.W.3d at 221). But Razberi has not show that it presented this law to the

arbitrator or that the arbitrator was in some other way made aware of this law. Doc. 14, DynaColor's Resp., 14. And, based on the arbitrator's award, it does not appear he appreciated this law but decided to ignore it. Doc. 4, DynaColor's App'x (Final Arbitration Award), 678. Thus, at most, the arbitrator made an error that, from the available evidence, appears to have been unintentional or negligent. This Court cannot upset an arbitration award based solely on such an error. *See Stolt-Nielsen*, 559 U.S. at 671 ("It is not enough for petitioners to show [the arbitrator] committed an error—or even a serious error.").

Further, Razberi has not shown that the award resulted in "significant injustice." *Am. Laser Vision*, 487 F.3d at 259 (quoting *Prestige Ford*, 324 F.3d at 395–96). Specifically, the arbitrator based his conclusion on alternative grounds. After finding that the "no action or inaction of DynaColor" caused Razberi's damages," the arbitrator went on to reason that "[unjust enrichment] is not a proper remedy merely because it might appear expedite [sic] or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." Doc. 4, DynaColor's App'x (Final Arbitration Award), 678. Thus, even if the arbitrator had not imposed an erroneous causation requirement, nothing in the record suggests he would have decided the unjust enrichment claim differently. Unjust enrichment is a claim in equity, and arbitrators "enjoy broad leeway to fashion remedies" they find appropriate based on the circumstances of the case before them. *Houston Ref. LP v. United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Intern. Union*, 2008 WL 2415525, at *8 (S.D. Tex. June 4, 2008) (internal quotations omitted) (quoting *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1219 (5th Cir. 1990)). District courts reviewing these awards should "neither second-guess conclusions underpinning the arbitrator's award, nor . . . attempt to determine

if the award is free from error." *Id.* Thus, the Court finds that even if the arbitrator committed an error in applying Texas law, this error resulted in no significant injustice warranting vacation of the award.

Finally, even if equitable remedies do not impose a rigid causation requirement, Texas reviewing courts still recognize that a "trial court exercises broad discretion in balancing the equities in a case seeking equitable relief." *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.). In the *Parker* case that Razberi relies on, the Supreme Court of Texas held that a plaintiff "was not required to show causation and actual damages as to any equitable remedies it sought" under its breach of fiduciary duty claim. *Parker*, 514 S.W.3d at 221. But the *Parker* court was reviewing the trial court's decision to grant a no-evidence summary-judgment motion on that issue. *Id.* at 221–22. A Texas appellate court distinguished *Parker* from the case before it, which was decided after a jury trial. *Sam Rayburn Mun. Power Agency v. Gillis*, 2018 WL 3580159, at *10–11 (Tex. App.—Beaumont July 26, 2018, pet. denied) ("Unlike *Parker*, the trial court in this case ruled upon the request for equitable relief after presiding over a jury trial and after considering all of the evidence and equities."). The appellate court found that the trial judge did not abuse his discretion in denying a request for equitable relief after the trial judge "spent hours reviewing evidence and pleadings related to that issue before deciding to deny equitable relief." *Id.* at 11. The appellate court thus refused to overturn the trial court's decision because it did not act arbitrarily or unreasonably in coming to its decision. *Id.* Similarly here, the arbitrator presided over a six-day evidentiary hearing where he heard witness testimony and admitted thousands of pages of documents. Doc. 14, DynaColor's Resp., 16. The parties extensively briefed their arguments to him in pre- and post-hearing motions. *Id.* And the arbitrator, at least in part, based his decision on correct principles of

Texas law. In sum, the Court holds that the arbitrator correctly weighed the equities of the case and did not manifestly disregard the law or exceed his powers in denying Razberi equitable relief.

## IV.

## CONCLUSION

For the reasons stated above, Razberi's Motion to Vacate (Doc. 10) is **DENIED** and DynaColor's Motion to Confirm Arbitration Award and Enter Judgment (Doc. 2) is **GRANTED**. The Court hereby **CONFIRMS** the award of arbitration, dated September 10, 2018, in all respects. DynaColor, Inc. shall recover from Razberi Technologies the amount set forth in the award of arbitration, $1,312,664.95, as well as pre-judgment and post-judgment interest and attorneys' fees, as specified in the final award. Finally, Razberi shall take nothing on its counterclaims against DynaColor. All other pending motions in this matter are terminated. A final judgment will follow this Order. The Clerk is **DIRECTED** to file this Order **UNDER SEAL**.

**SO ORDERED.**

**SIGNED: April 2, 2019**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE